IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 7, 2006 Session


# GARY FRANK CASTELLI v. JOY T. CASTELLI

**Direct Appeal from the Circuit Court for Hamilton County**
**No. 02-D-1461/1498      Hon. Marie Williams, Circuit Judge**

_____

**No. E2004-02997-COA-R3-CV  - FILED MAY 1, 2006**

_____

The Trial Court granted the parties a divorce, identified, valued and divided the marital property.
The husband appeals the division of marital property as being inequitable.  We affirm, as modified.


**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed, as Modified.**


HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and SHARON G. LEE, J., joined.

Barry L. Gold, Chattanooga, Tennessee, for appellant.

Sandra J. Bott, Chattanooga, Tennessee, for appellee.


**OPINION**


        In this divorce action, the parties were married on October 15, 1994, and both filed
for divorce within days of one another in July 2002.  The parties have one child, Karla, d.o.b. 8/25/88
(the wife's child from a former marriage whom the husband adopted).

        A trial was held on June 19 and August 7, 2003.  The parties' Asset and Liability
Statements were introduced, and a representative of Merrill Lynch testified regarding the value of
the Merrill Lynch accounts.  A CPA who had prepared the parties' tax returns, testified, as well as
the parties.

Following trial, the Trial Court found that at the time of the marriage, the husband owned the marital residence and had equity therein of approximately $71,000.00, and also owned rental property in Smyrna, Tennessee, a UPS retirement account, and a stock account. The husband was employed with UPS when the parties married, and the wife was also employed, but left her job and relocated to Chattanooga with her child to marry the husband. The Court held that the wife thereafter was primarily a homemaker, and also made contributions to work done on the Smyrna property.

The Court found the husband's pre-marital equity in the marital residence to be $70,863.00, which was held to be the husband's separate property. The Court found the present value of the marital residence to be $265,000.00, and ordered the parties' Corvette sold to pay off the second mortgage on the house, and then ordered the residence be sold and the first mortgage paid, and directed any remaining proceeds (after husband received his $70,863.00) to be divided equally. The Court found the Smyrna property had a pre-marital equity of $50,000.00, and was currently worth $60,000.00. The Court awarded the wife $1,000.00 of the increase in value based on her contribution. The Court awarded each party their Lexus vehicle, and stated that each would be liable for the debt related to the vehicle.

The Court found that 23% of the husband's UPS pension was marital, and awarded half of that amount to the wife. The Court found that the Suntrust account worth $10,000.00 was marital, and divided it equally. The Court found that a Merrill Lynch account had a value of $127,980.00, and that the husband had pre-marital equity in that account of $19,446.00. The pre-marital equity was awarded to the husband, and the remainder of the account was divided equally. The Court found that two Merrill Lynch accounts were transmutated when the husband put them in joint names, and thus were marital property, and observed that it had considered all the factors listed in Tenn. Code Ann. §36-4-121(a)(1), and found that the husband was the primary contributor to the accumulation of funds in these accounts, but he was also a major or at least an equal contributor to the loss of funds in a Ponzi scheme,[1] so the Court found that these accounts should be divided equally.

The Court ordered that if the stock needed to be sold to satisfy the margin account, any tax liability from the same would be divided equally, and ordered that if any money was recovered in the litigation regarding the Ponzi scheme, it would be divided equally between the parties. The Court awarded the wife $10,702.00 from the Overseas Partners Ltd. account, and then stated that the husband had gotten $13,300.00 more than the wife in marital property overall, so the Court awarded wife a cash payment from husband of $6,650.00. The Court ordered each party to pay his or her own attorney's fees, and the wife was also ordered to pay her own credit card debt.

---

[1] "A fraudulent investment scheme in which money placed by later investors pays artificially high dividends to the original investor, thereby attracting even larger investments. The scheme takes its name from Charles Ponzi, who in the late 1920's was convicted and punished for fraudulent schemes he conducted in Boston." *A Dictionary of Modern Legal Usage*, 2nd Ed. Garner, Oxford Press.

The husband was also ordered to pay child support of $600.00 per month.

Subsequently, the husband filed a Motion to Alter or Amend Judgment pursuant to Rule 59.04. Specifically, the husband asserted that there was no proof at trial of an increase in the value of the Smyrna property since the parties married, and there was a mathematical error in the Court's computation of the wife's share of the overseas account, and the Court should allow the husband to buy out the wife's interest in the marital residence in lieu of selling it, and he made other assertions regarding tax liability deduction, etc.

The wife filed a Response, and agreed there was a mathematical error regarding the Overseas account, and that her share should have been $2,142.25, but disagreed with the husband's other assertions. She also filed a Motion to Alter and Amend pursuant to either Tenn. R. Civ. P. 59, or Tenn. R. Civ. P. 60. In this Motion she averred the Court's award should be altered due to the husband's fraudulent concealment of the settlement funds from the Ponzi litigation. (The husband had filed a Notice of Payment, stating that he had sent the wife a check for $34,888.10 for her one-half of the settlement proceeds in the Ponzi matter).

The Court held a hearing on the pending motions and entered an Order finding the husband did not list the Ponzi funds on his asset statement, and that he failed to respond truthfully when questioned about the same at trial. The Court found the husband had "no credibility whatsoever", and that he intentionally withheld information from the Court. The Court Ordered that the husband would be liable for all capital gains taxes and that the wife would be awarded all of the funds from the Ponzi litigation, due to the husband's fraud. The Court also Ordered the attorneys to deliver the information regarding the husband's testimony to the District Attorney concerning whether the husband should be indicted for perjury.

The Court entered another Order correcting the mathematical error regarding the Overseas account and thus awarded the wife $2,142.25 from the same. It also sustained the husband's Motion regarding the increase in value of the Smyrna property, and vacated the $1,000.00 awarded to the wife from that asset, but otherwise overruled the husband's other assertions of error. The Court did state the husband could buy out the wife's interest in the marital residence by paying her $44,482.00 which was $265,000.00 (current value) minus $70,863.00 (husband's pre-marital equity) and minus the first and second mortgages. The wife was also awarded her attorney's fees incurred post-judgment in uncovering the Ponzi funds, which fee the Court set at $2,150.00.

The husband has appealed and raised the sole issue of whether the Court erred in the division of the parties' marital property.

The husband argues the Trial Court erred in its division of the marital property, because the statutory factors militate against the Trial Court's division. He argues that the marriage was of short duration, and thus the case law requires that the division should be approached with a view toward restoring the parties to their financial status prior to the marriage. He argues that the Court's division is inequitable, because the wife was given a greater share of the marital estate, when

she brought virtually no assets into the marriage, but he does not take issue with the Court's characterization or valuation of the marital property.

The Trial Court's factual findings are reviewed *de novo* with a presumption of correctness; no such presumption attaches to the Trial Court's legal conclusions. Tenn. R. App. P. 13(d). The Trial Court is required to divide the parties' marital property equitably (without regard to fault), pursuant to the factors listed in Tenn. Code Ann. §36-4-121.

The trial court has "wide discretion in adjusting and adjudicating the parties' rights and interests in all jointly owned property." *Fisher v. Fisher*, 648 S.W.2d 244, 246 (Tenn. 1983). Thus, "a trial court's division of the marital estate is entitled to great weight on appeal, and should be presumed to be proper unless the evidence preponderates otherwise." *Batson v. Batson*, 769 S.W.2d 849 (Tenn. Ct. App. 1988)(citations omitted).

The duration of the marriage is not the only factor to consider, but *Batson* teaches that it is one of the most significant factors. Other factors include the age and health of the parties, which is comparable; the husband likely has a greater earning capacity, and at the time of the trial, neither party was employed. Neither party really contributed to the education or training of the other party, although the wife did withdraw funds from the Merrill Lynch account to attend cosmetology school. Both parties contributed to the marital estate, the husband as wage earner and the wife as homemaker.

The husband clearly has more separate property, but he also brought more property into the marriage. The Court split the tax consequences, which is appropriate. There was no proof regarding social security benefits, but a reasonable assumption would be the husband would have greater benefits due to his much longer work history.

While the initial award of marital assets to the wife in the first instance was generous, we cannot say that the Trial Court abused its wide discretion in adjusting the interest of the parties in their marital property. Subsequently, however, the Court awarded the wife the husband's share of the recovery from the Ponzi scheme proceeds, which had initially been awarded to the husband. It is clear from the record that when it came to light that the husband had withheld information about the Ponzi scheme from the Court, that the Court "punished" the husband for his conduct. The Court, however, cannot consider fault when distributing the marital property or fashioning the distribution based on punishing a party's conduct. The statute explicitly says that fault is not to be considered, and the case law on the subject recognizes this. *See* Tenn. Code Ann. § 36-4-121; *Jahn v. Jahn*, 2000 WL 134335 (Tenn. Ct. App. Feb. 4, 2000); *Turner v. Turner*, 1997 WL 136448 (Tenn. Ct. App. March 27, 1997).

The award to the wife of her attorney's fees incurred in uncovering the concealment was a proper way to sanction the husband for his wrongful conduct, but his conduct should not be considered in the ultimate property division pursuant to the statute. Accordingly, we modify the final property settlement to award the husband one-half of the recovery from the Ponzi scheme, as

originally held by the Trial Judge, but otherwise affirm the Judgment of the Trial Court, with the cost of the appeal assessed one-half to each party.

_____
HERSCHEL PICKENS FRANKS, P.J.